# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58970-2-II |
| Respondent, | |
| v. | |
| SAMUEL ELIJAH STACY, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Samuel E. Stacy appeals his conviction for first degree assault. Stacy argues that the superior court erred by admitting two photographs of the victim after he was assaulted. Stacy also argues he received ineffective assistance of counsel because counsel failed to object to the testimony of two of the victim's family members regarding the lasting effects of the assault on the victim. We affirm.

## FACTS

On July 28, 2022, Stacy repeatedly punched and kicked Nathaniel Woods while they were both inmates in the Pierce County Jail. The State charged Stacy with first degree assault. The case proceeded to a jury trial.

On the day of the incident, Correctional Deputy Nouhoum Sidibe was assigned to monitor the 3-East-A unit in Pierce County Jail. Sidibe heard a very loud noise and went to the front gate of the unit. Sidibe observed Woods on his back while Stacy was hitting him in the head with a closed fist. Sidibe yelled at Stacy to stop and called for backup. After the call for backup, Stacy

stopped hitting Woods with his fists, but started stomping on Woods' head with his right foot. Sidibe testified that Stacy stomped on Woods' head three or four times "very hard." 1 Verbatim Rep. of Proc. (VRP) at 58. When Sidibe's backup arrived, Stacy stopped, turned around, and put his hands behind his back. Medical personnel were called and responded quickly because the medical clinic was close to the unit.

Dr. Miguel Balderama, the director of the medical clinic at Pierce County Jail, responded to the call for medical assistance for Woods. Dr. Balderama observed Woods in "acute distress." 2 VRP at 138. Woods had labored breathing, blood on his head, significant swelling in the face, and fixed pupils. According to the doctor, fixed pupils are indicative of significant brain trauma. Woods also demonstrated involuntary movement, another indicator of brain trauma. Based on the extent of Woods' injuries, Dr. Balderama determined Woods needed to be transported to the emergency room.

Woods had intracranial bleeding and multiple fractures to bones in the skull, face, and shoulder. Woods also had to be placed on a respirator for a prolonged period of time due to his brain injuries interfering with his ability to breathe. Dr. Balderama testified Woods would have died without receiving medical treatment.

Woods' sister, Enjoli Pessanha-Maule, testified at trial. During her testimony, the State introduced two photographs of Pessanha-Maule and Woods. Exhibit 13 showed the first time Pessanha-Maule visited Woods in the hospital. Exhibit 14 showed Pessanha-Maule doing physical exercises with Woods while he was hospitalized. Stacy objected to admission of the exhibits. Stacy argued that the photos were unduly prejudicial and not relevant to identity because Woods had already been identified. The trial court overruled the objection.

Pessanha-Maule testified that she was Woods' guardian because he requires a guardianship and full-time care as a result of his injuries. Pessanha-Maule testified that Woods went to their grandmother's house to live when he was released from the hospital. And Woods' entire family joined together to care for Woods.

Pessanha-Maule testified that since Woods has been released he has shown no positive signs of recovery. He no longer shows emotion and does not talk often. Woods also requires physical therapy, occupational therapy, and speech therapy. Pessanha-Maule also described the daily care that Woods requires since his injuries.

Stacy did not object to any of Pessanha-Maule's testimony except the admission of the two photographs.

Woods' father, Joseph Woods, also testified at trial. Joseph testified that he was living with Woods to provide him with daily care.[1] Joseph testified that it was months before Woods was able to recognize Joseph as his father. Joseph testified that Woods struggled with stairs and someone is always with him when he is walking in the house. Joseph also testified that Woods would not be capable of working or living on his own. Stacy did not object to any of Joseph's testimony.

The trial court instructed the jury on both first degree assault and the lesser included offense of second degree assault. The jury found Stacy guilty of the higher degree crime of first degree assault. The trial court imposed a standard range sentence of 318 months' confinement.

---

[1] Because Joseph Woods and Nathaniel Woods have the same last name, we refer to Joseph by his first name to avoid confusion. No disrespect is intended.

ANALYSIS

Stacy argues that the superior court erred by admitting two photographs of the Woods after the assault. Stacy also argues he received ineffective assistance of counsel because counsel failed to object to the testimony of two of the victim's family members. We affirm.

I. ADMISSIBILITY OF PHOTOGRAPHS

Stacy argues that the superior court erred by admitting Exhibits 13 and 14, which he characterizes as "in-life photos." Br. of Appellant at 5. We disagree.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Burke*, 196 Wn.2d 712, 741, 478 P.3d 1096 (2021). Under ER 401, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." And relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403.

To prove first degree assault, the State was required to prove that Stacy assaulted Woods with the intent to inflict great bodily harm and assaulted Woods by any force or means likely to produce great bodily harm or death. RCW 9A.36.011. " 'Great bodily harm' means bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ[.]" RCW 9A.04.110(4)(c).

Here, Stacy argues that admitting Exhibits 13 and 14 was improper because the "only purpose of admitting these two exhibits was to inflame the jury." Br. of Appellant at 6. However, the State clearly had to prove that Stacy intended to inflict great bodily harm and assaulted Woods

by any force or means likely to produce great bodily harm. Because great bodily harm is defined in part as causing significant permanent loss or impairment of the function of a body part or organ, the lasting effects of Stacy's assault were relevant to prove the elements of first degree assault. Further, the admission of only two photographs of the victim after the assault was not unduly prejudicial. Accordingly, the trial court did not abuse its discretion in admitting Exhibits 13 and 14.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Stacy argues he received ineffective assistance of counsel because his defense counsel failed to object to the "victim impact testimony" of Woods' family members. Br. of Appellant at 7. We disagree.

To establish ineffective assistance of counsel, Stacy must show both defense counsel's performance was deficient and the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). We strongly presume that defense counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Because Stacy bases his ineffective assistance of counsel claim on defense counsel's failure to object, Stacy "must show that the objection would likely have succeeded." *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019).

Stacy argues that defense counsel's failure to object to Woods' family's testimony was deficient because the "only issue was whether this was a first-degree assault or a second-degree assault" and the evidence was highly prejudicial "highlighting the enormous impact the assault

had on [Woods]." Br. of Appellant at 8-9. However, as explained above, proving Stacy committed first degree assault required proving both the intent and means to cause great bodily harm. RCW 9A.36.011. And because great bodily harm is defined, in part, as significant permanent loss or impairment of the function of a body part or organ, the lasting effects of Stacy's assault were relevant to proving whether Stacy assaulted Woods with the means to inflict great bodily harm. Because the evidence of the lasting effects of Stacy's assault on Woods was relevant to proving the charge of first degree assault, Stacy cannot show that an objection to the family members' testimony would have likely succeeded. Accordingly, Stacy fails to show deficient performance and his ineffective assistance of counsel claim fails.

## CONCLUSION

The trial court did not err by admitting Exhibits 13 and 14. And Stacy did not receive ineffective assistance of counsel. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

LEE, J.